IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–01458–KMT

COMBINED INSURANCE COMPANY OF AMERICA, an Illinois corporation,

      Plaintiff,

v.

JENNIFER GLASS, an individual,

      Defendant/Cross-claim Plaintiff

v.

ALAN GERBITZ AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RICHARD E. GERBITZ,

      Defendant/Cross-claim Defendant.

---

**ORDER**

---

      This matter comes before the court on Defendant Jennifer Glass's "Motion for Entry of Default Judgment against Defendant Alan Gerbitz" (Doc. No. 19, filed August 15, 2014 [Mot. Default J.]) and "Motion to Strike Defendant Gerbitz's Answer to Complaint in Interpleader and Cross-Claim against Defendant Glass" (Doc. No. 29 [Mot. Strike]), as well as Plaintiff Combined Insurance Company of America's ("Combined") Motion to Dismiss Interpleader Plaintiff (Doc. No. 17, filed Aug. 15, 2014) and Motion for Attorneys' Fees and Costs (Doc. No. 18, filed Aug. 15, 2014).

**PROCEDURAL HISTORY**

This is an interpleader action commenced by Combined to determine the proper beneficiary of a $72,000 Accident Only Life Insurance Policy ("the Policy") issued to Richard E. Gerbitz.   Combined initiated this action by filing its Complaint in Interpleader on May 23, 2014. (Doc. No. 1 [Compl.].)  The Complaint names Jennifer Glass, individually, and Alan Gerbitz, as personal representative of the Estate of Richard E. Gerbitz, as defendants.

On May 23, 2014, Combined moved to deposit the proceeds from the Policy, along with any applicable interest, into the Registry of the Court pending a determination by the court as to the party or parties entitled to benefit under the Policy.  (Doc. No. 2.)  The court granted this Motion on June 3, 2014 and directed Combined to deposit the life insurance benefits into the Registry of the Court.  (Order, Doc. No. 6.)  On August 1, 2014, Combined deposited $73,150.01 into the Registry of the Court.  (*See* Doc. No. 11.)

Combined sent Waivers of the Service of Summons to Defendants Glass and Gerbitz on May 29, 2014 and both Defendants signed those waivers on June 10, 2014.  (*See* Doc. Nos. 7-8, filed July 21, 2014.)  Accordingly, pursuant to Federal Rule of Civil Procedure 4(d)(3), Defendants were required to answer or otherwise respond to Combined's Complaint in Interpleader no later than July 28, 2014.

On July 28, 2014, Defendant Glass filed an "Answer to Complaint in Interpleader, Claim to Interpleader Funds, and Cross-Claims against Defendant Alan Gerbitz."  (Doc. No. 9 [Glass Answer & Cross-Claim.)  Defendant Gerbitz did not answer or otherwise respond on or before July 28, 2014.

On August 1, 2014, Defendant Glass moved for entry of default against Defendant Gerbitz, based on the latter's failure to timely answer or otherwise respond. (Doc. No. 10.) The Clerk entered default against Defendant Gerbitz on August 7, 2014. (Doc. No. 12.) Defendant Glass sent Defendant Gerbitz notice of the default entered against him that same day. (*See* Doc. No. 14.)

Defendant Glass's Motion for Default Judgment and Combined's Motion to Dismiss Interpleader Plaintiff and Motion for Attorneys' Fees and Costs were all filed on August 15, 2014. (*See* Mot. Default J.; Mot. Dismiss; Mot. Atty.'s Fees & Costs.) Because Combined and Defendant Glass do not oppose each other's motions, no responses or replies were filed.

On September 2, 2014, 26 days after default was entered against him, Defendant Gerbitz, filed a letter with the court stating:

> Combined Insurance was provided information by me that indicated Jennifer Glass never had signatory authority on my brother's account. Based on the insurance form, this misrepresentation would be considered fraud and insurance would be denied. How then can entering into a contract with a fraudulent signature, the same party collects the proceeds of the policy?
>
> Only one conclusion can be made in this situation and that Jennifer Glass is ineligible to receive the proceeds of this policy and the assignment be made either to Richard and my father, Clarence Gerbitz or directly to Richard's estate.

(Doc. No. 22.)

Over two months later, on November 24, 2014, Defendant Gerbitz filed a *pro se* entry of appearance. (Doc. No. 24.) Two days later, on November 26, 2014, Defendant Gerbitz filed a "Request for extension of time to comply." (Doc. No. 25.) The court construed this filing as a motion for extension of time, and denied it without prejudice on December 2, 2014 for failure to comply with Local Rule 7.1(a)'s duty to confer. (Minute Order, Doc. No. 26);

*see also* D.C.COLO.LCivR 7.1(a) (requiring a party to confer or make reasonable good faith efforts to confer with any opposing counsel prior to filing a motion).  Defendant Gerbitz did not file a renewed motion for extension of time.

On December 15, 2014, Defendant Gerbitz filed a *pro se* "Answer to Complaint in Interpleader and Cross-Claim against Defendant Glass."[1]  (Doc. No. 28 [Gerbitz Answer & Cross-Claim].)  Defendant Glass filed her Motion to Strike Defendant Gerbitz's Answer and Cross Claim on December 26, 2014.[2]  (*See* Mot. Strike.)  Defendant Gerbitz filed a Response to Defendant Glass's Motion to Strike on January 16, 2015 (Doc. No. 33 [Resp. Mot. Strike]) and Defendant Glass filed a reply on January 27, 2015.[3]  (Doc. No 35 [Reply Mot. Strike]).

## FACTUAL BACKGROUND

In 2004, Combined issued the Policy to Richard Gerbitz (hereinafter the "Insured"). (Doc. No. 1, ¶ 6, Ex. 1.)  The face value of the Policy's death benefit is $72,000.  (*Id.,* Ex. 1.) The Insured died in an accident on February 1, 2014.  (*Id.,* Ex. 2.)  In light of the Insured's death, Combined admits it must pay death benefits under the Policy to the beneficiary or beneficiaries designated by the Insured, or otherwise in accordance with the provisions of the Policy and controlling law.  (*Id.* ¶ 8.)

---

[1] Defendant Gerbitz also filed an "Answer [sic] to Motion to Dismiss Interpleader Plaintiff Combined Insurance Company of America" stating that he was unopposed to Combined's Motion to Dismiss and Motion for Attorney's Fees.  (Doc. No. 27.)

[2] Defendant Glass also filed a Preliminary Answer to Defendant Gerbitz's Answer and Cross Claim on January 5, 2015.  (Doc. No. 31.)  Defendant Gerbitz subsequently filed an Answer to Defendant Glass's Preliminary Answer on January 27, 2015 (Doc. No. 36); however, the court struck this pleading on February 26, 2015 as an unauthorized reply to an answer.  (Minute Order, Doc. No. 38.)

[3] Defendant Gerbitz subsequently filed a "Reply to Defendant Glass' request to Strike Gerbitz Answer to Complaint."  (Doc. No. 37.)  However, the court struck this filing on February 26, 2015 as an unauthorized surreply.  (Minute Order, Doc. No 39.)

In 2004, the Insured named Defendant Glass, his "friend," as the primary beneficiary under the Policy.  (*Id.* ¶ 9, Ex. 3.)  He did not name a contingent beneficiary.  (*See id.*)

Combined first learned of the Insured's death in April 2014 through a claim for benefits filed by the Insured's brother, Defendant Gerbitz.  (*Id.,* ¶ 10, Ex. 4.)  Defendant Gerbitz claimed that Defendant Glass should not be the beneficiary under the Policy and that, based on the Insured's attempt to obtain benefits under the policy in November 2010, the Decedent intended to change the beneficiary to himself.  (*Id.,* Ex. 4.)  Mr. Gerbitz, acting as the personal representative of the Insured's Estate, claimed that the Estate is entitled to the benefits under the Policy.  (*Id.*)

## ANALYSIS

### I.      *MOTION TO STRIKE*

Defendant Glass's Motion to Strike seeks to strike Defendant Gerbitz's Answer because it was untimely filed after default had already been entered.  In his Response, Defendant Gerbitz attempts to explain why he did not timely answer or otherwise respond to this action and requests that Defendant Glass's Motion to Strike and Motion for Default Judgment be denied.

In light of Defendant Gerbitz's *pro se* status, the court elects to treat Defendant Gerbitz's Response to the Motion to Strike as a request to set aside the entry of default.  *Cf., e.g., Miller v. Bennett,* No. 12-cv-02063-MSK-CBS, 2013 WL 5450311, at *8 (D. Colo. Aug. 12, 2013) (treating a combined motion to dismiss or transfer for lack of personal jurisdiction as subsuming a request to set aside an entry of default); *Vick v. Wong,* 263 F.R.D. 325, 238 (E.D. Va. 2009) (where the defendant submitted an affidavit disputing several of the plaintiff's claims and also asked that her affidavit be considered an opposition to the motion for entry of default judgment,

the court elected to treat the defendant's affidavit as a motion to set aside default); *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir.1981) ("Even if a default had been entered, opposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion."). Alternatively, the court finds that it may consider whether to set aside the default *sua sponte*. *Judson Atkinson Candies, Inc. v. Latini-Hoberger Dhimantec,* 529 F.3d 371, 386 (7th Cir. 2008) ("Without deciding whether a district court could set aside a default judgment *sua sponte,* we believe that the district court had the authority to set aside *sua sponte* an entry of default against [the defendant] for good cause."); *Miller v. Madison,* No. 1:12-CV-0874 (LEK/CFH), 2013 WL 2181240, at *2 (N.D.N.Y. May 20, 2013) ("Because Rule 55(c) does not refer to a motion requirement, a court may set aside an entry of default *sua sponte.*").

"The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). "[T]he good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l Corp.,* 115 F.3d 767, 775 n.6 (10th Cir. 1997).

The principal factors in determining whether a defendant has met the good cause standard are (1) whether the default was the result of culpable conduct of the defendant; (2) whether the plaintiff would be prejudiced if the default should be set aside; and (3) whether the defendant presents a meritorious defense. *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x. 744, 750 (10th Cir. 2009) (citation omitted); *Hunt v. Ford Motor Co.*, 65 F.3d 178 (10th Cir. 1995) (citation omitted). The court need not consider each of these factors and may consider other

factors as well.  *Guttman v. Silverberg*, 167 F. App'x 1, 4 (10th Cir. 2005) (citation omitted).

Setting aside an entry of default is addressed to the sound discretion of the court.  *Nikwei v. Ross*

*Sch. of Aviation, Inc.*, 822 F.2d 939, 941 (10th Cir.1987).  The court's analysis is guided by the

principle that "[t]he preferred disposition of any case is upon its merits and not by default."

*Gomes v. Williams,* 420 F.2d 1364, 1366 (10th Cir. 1970).  It is, however, within the court's

discretion to balance the judicial preference against default judgments with consideration of

social goals, justice, and expediency.  *Gomes,* 420 F.2d at 1366.

### A.    Culpable Conduct

"Generally a party's conduct will be considered culpable only if the party defaulted

willfully or has no excuse for the default."  *United States v. Timbers Pres., Routt Cnty., Colo.,*

999 F.2d 452, 454 (10th Cir. 1993) (citation omitted) *abrogated on other grounds by Degen v.*

*United States,* 517 U.S. 820, 825 (1996).  Conversely, an unintentional or good faith mistake is

not considered culpable conduct for the purposes of Rule 55(c).  *See id.*; *see also United States v.*

*Signed Pers. Check No. 703 of Yubran S. Mesle,* 615 F.3d 1085, 1092 (9th Cir. 2010) (describing

"culpable conduct" as "intentionally" failing to answer, or acting in bad faith in order to take

advantage of the opposing party, to interfere with judicial decision-making, or otherwise trying

to manipulate the legal process).  Further, a party's prompt motion to set aside an entry of default

serves to mitigate any culpable conduct that may exist.  *Zen & Art of Clients Server Computing,*

*Inc. v. Resource Support Assocs., Inc.,* 06-cv-00239-REB-MEH, 2006 WL 1883173, at *2 (D.

Colo. July 7, 2006) (citing *Savin Corp. v. C.M.C. Corp.,* 98 F.R.D. 509, 511 (N.D. Ohio 1983))

(finding that a mistaken delay in response was not willful because the defendant "expeditiously

moved to remedy his mistake").

Defendant Gerbitz maintains, that at or around the time he executed the Waiver of the Service of Summons, he had a telephone conversation with Leslie Kendricks of Hall and Evans, the law firm representing Combined, and his "understanding at the end of the phone conversation was that he would be contacted . . . by the court when needed."  (Resp. Mot. Strike ¶ 3.)  "A good faith mistaken belief regarding procedural questions generally is not culpable conduct." *Ledbetter v. Kan. Dep't of Soc. & Rehab. Servs.,* No. Civ.A.99-2261-KHV, 2000 WL 206208, at *1 (D. Kan. Jan. 3, 2000) (citing *Fink v. Swisshelm,* 185 F.R.D. 353, 357 (D. Kan. 1999) & *Freeze-Dry Prods., Inc. v. Metro Park Warehouse, Inc.,* 160 F.R.D. 156 (D. Kan. 1995)); *see also Zen & Art of Clients Server Computing,* 2006 WL 1883173, at *2.  However, the court does not find that Defendant Gerbitz arrived at his belief that he would be contacted by the court when needed in good faith.

First, because she does not represent Defendant Gerbitz, the court finds it highly unlikely that Ms. Kendricks would have told Defendant Gerbitz that he should simply wait for the court to contact him.  Indeed, Defendant Gerbitz does not maintain that Ms. Kendricks actually said anything to that effect; instead, he states only that he came to that "understanding" at the end of the conversation.

Moreover, Defendant Gerbitz's purported understanding is completely undermined by his agreement to the terms of the Waiver of the Service of Summons.  More specifically, by signing the waiver of service, Defendant Gerbitz explicitly agreed with the following statement:

> I understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from 5/29/2014, the date when this request was sent . . . .
> If I fail to do so, a default judgment will be entered against me or the entity I represent.

(Doc. No. 8.)

Defendant Gerbitz also did not make timely efforts remedy his mistake.  Despite being served with a copy of the entry of default on August 7, 2014 (*see* Doc. No. 14), Defendant Gerbitz waited until almost a month later to file his September 2, 2014 letter.  That letter does not address Defendant Gerbitz's failure to timely respond whatsoever; instead, it simply asserts that Defendant Glass engaged in fraud and is therefore ineligible to receive benefits under the Policy.  (Doc. No. 22.)

Defendant Gerbitz then waited another 83 days before filing an entry of appearance and his Request for Extension to Comply.  (Doc. Nos. 24-25.)  Even though the court denied his Request for Extension to Comply without prejudice for failure to comply with Local Rule 7.1(a), Defendant Gerbitz did not file a renewed request or motion.

Instead, Defendant Gerbitz waited yet another 19 days before filing his Answer and Cross-Claim.  (*See* Gerbitz Answer & Cross-Claim.)  Ultimately, Defendant Gerbitz's Answer and Cross Claim was filed 130 days after default was entered against him.

Altogether, the court finds that Defendant Gerbitz has not provided any viable excuse as to why he failed to timely respond to this action.  Further, Defendant Gerbitz's lackadaisical approach to remedying his mistake indicates that he intended to proceed with this action at his own pace, without any regard to the ordinary course of the judicial process.   Accordingly, the court finds that Defendant Gerbitz's failure to timely respond to this action was the result of culpable conduct.

### B.       Prejudice

Prejudice is established when a plaintiff's ability to pursue his claims has been hindered by, for example, a loss of available evidence, increased potential for fraud or collusion, or

substantial reliance upon the judgment. *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,* 175 F. App'x 519, 522-243 (3d Cir. 2006). Here, Defendant Glass does not maintain that the delay caused by Defendant Gerbitz's failure to respond has hindered her ability to pursue her claims. *See also Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 98 (2d Cir. 1993) ("delay standing alone does not establish prejudice").

Of course, Defendant Glass has incurred costs in obtaining the default, as well as drafting and filing her Motion for Default Judgment and Motion to Strike, which would be mooted if the default is set aside. However, such prejudice can likely be mitigated by setting conditions on Defendant Gerbitz, such as requiring him to pay reasonable costs and attorney's fees incurred by Defendant Glass. *See Littlefield v. Walt Flanagan & Co.,* 498 F.2d 1133, 1136 (10th Cir. 1974) ("The imposition of conditions in an order vacating a default is a device frequently used to mitigate any prejudice which plaintiff may suffer by allowing defendants to plead"); *Archer v. Darling,* No. 09-cv-01988, 2011 WL 63634, at *3 (D. Colo. Jan. 7, 2011) (requiring the defaulted defendant to pay reasonable attorney's fees and costs incurred by plaintiff in seeking entry of default against him).

Ultimately, the court finds that setting aside the default would require only that Defendant Glass prove her case. This falls short of establishing cognizable prejudice to Defendant Glass. *SecurityNational Mortg. Co. v. Head,* No. 13-cv-03020-PAB-BNB, 2014 WL 4627483, at *4 (D. Colo. Sept. 15, 2014) (quoting *Lacy v. Sitel Corp.,* 227 F.3d 290, 293 (5th Cir. 2000)).

### C.      Meritorious Defense

As to the third "good cause" factor, "the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action." *In re Stone,* 588 F.2d 1316, 1319 (10th Cir. 1978).  A defendant must provide "a sufficient elaboration of facts to permit the trial court to judge whether the defense, if movant's version were believed, would be meritorious." *Id.*  A defendant is not required to "demonstrate a likelihood of success on the merits." *Coon v. Grenier,* 867 F.2d 73, 77 (1st Cir. 1989).

The court finds that Defendant Gerbitz has failed to set forth a meritorious defense.  First, the court finds that Defendant Gerbitz, as executor of the Insureds' estate, likely does not have standing to assert any claim as to the funds payable under the Policy.  More specifically, Colo. Rev. Stat. § 15-15-101 provides as follows:

> (1) A provision for nonprobate transfer on death in an insurance policy . . . is nontestamentary.  This subsection (1) includes a written provision that:
>
> (a) Money or other benefits due to, controlled by, or owned by a decedent before death must be paid after the decedent's death to a person whom the decedent designates either in the instrument or in a separate writing, including a will, executed either before or at the same time as the instrument, or later; . . . .

Defendant Gerbitz does not assert that the Insured's will made any separate disposition of the Policy benefits.  Thus, the benefits due under the Policy fall outside of the Insured's estate.

Further, although a transferee of a nonprobate transfer may be liable to a probate estate for "allowed claims against the decedent's probate estate and statutory allowances to the decedent's spouse and children to the extent the estate is insufficient to satisfy those claims and allowances," proceeds transferred "pursuant to a beneficiary designation under a

life insurance policy" are expressly excluded from such liability.  Colo. Rev. Stat. § 15-15-103(1)-(2).  Thus, Defendant Glass, as the named beneficiary on the Policy, cannot be held liable for any deficiencies in the Insured's estate.

Even if Defendant Gerbitz does have standing to assert a claim to the benefits payable under the Policy, the court is not convinced he has a meritorious defense to Defendant Glass's claim to the Policy benefits.  Defendant Gerbitz admits that Defendant Glass is listed as the beneficiary under the Policy and surmises that this is because she and the Insured were living together at the time the Insured took out the Policy.  (Gerbitz Answer & Cross-Claim ¶ 4.)  Nevertheless, Defendant Gerbitz alleges that Defendant Glass and the Insured split up sometime before the latter's death, and that due to the effects of severe bout of carbon monoxide poisoning, the Insured likely forgot that Defendant Glass was listed as the beneficiary on the Policy or that there was even a death benefit aspect to the Policy.  (*Id.* ¶ 5, 11, 14.)  Defendant Gerbitz also alleges that, although he does not have anything in writing, the Insured repeatedly stated to him: "if I go first, everything is yours with one exception [of $20,000 for a close friend]."  (*Id.* ¶ 16.)

"Ordinarily, where a contract of insurance prescribes the manner in which a change of beneficiary may be accomplished, a change of beneficiary can be accomplished only in the manner specified in the policy."  *ITT Life Ins. Corp. v. Damm,* 567 P.2d 809, 287 (Colo. App. 1977) (citing *Roberts v. Johnson,* 212 F.2d 672 (10th Cir. 1954)).  However, an equitable substitution of a beneficiary may be appropriate "when and only when, the intention of the insured is established beyond question and he has done everything possible under the

circumstances to effectuate that intention." *Finnerty v. Cook,* 195 P.2d 973, 974 (Colo. 1948); *see also Fox v. Hawkins,* 344 P.2d 973, 443 (Colo. 1959).

Here, the Policy states that the "Insured can change the beneficiary at any time by giving Combined written notice satisfactory to Combined which is received by Combined at its home office during the Insured's lifetime.  Unless irrevocably designated the beneficiary's consent is not required."  (Compl., Ex. 1 at 5, ¶ 13.)  Defendant Gerbitz does not allege that the Insured ever gave Combined written notice of a change of beneficiary.

Further, even accepting Defendant Gerbitz's allegations as true, the court does not find grounds warranting an equitable substitution of the beneficiary on the Policy.  The Insured's alleged statement that "everything" would go to Defendant Gerbitz if he died falls well short of establishing beyond question that the Insured intended to change the beneficiary under the Policy.  Gerbitz Answer & Cross-Claim ¶ 16.)  This is especially true as Defendant Gerbitz admits that "nothing was ever mentioned about life insurance."  (*Id.*)  Further, the facts alleged by Defendant Gerbitz fail to demonstrate that the Insured did anything to effectuate an intention to change the Policy beneficiary.

Defendant Gerbitz also argues that Defendant Glass should be disqualified from collecting benefits under the policy because she, rather than the Insured, signed an Automatic Premium Collection form authorizing the direct withdrawal of premiums from the Insured's bank account.  (*Id.* ¶ 7, Ex. 1.)  However, Defendant Gerbitz has not submitted, nor can the court otherwise locate, any authority suggesting the mere that fact Defendant Glass signed the Automatic Premium Collection form on the Insured's behalf disqualifies her from receiving benefits under the Policy.  Notably, the Insured did not challenge Combined's authority to make

automatic withdrawals on his bank account at any time between when the form was signed in

June 2004 and his death in February 2014.  Further, Defendant Gerbitz does not dispute that the

Insured completed and signed the Application designating Defendant Glass as the beneficiary of

the Policy.  (Compl., Ex. 3.)

Altogether, although Defendant Glass would not suffer any real prejudice if the default

were set aside, the court finds that Defendant Gerbitz's failure to respond was the result of

culpable conduct and he has not set forth facts establishing a defense to Defendant Glass's claim

that she is the proper beneficiary under the Policy.  In light of these circumstances, as well as the

fact that Defendant Gerbitz has not made any formal request under Rule 55(c), the court declines

to set aside the entry of default.  *See Hunt v. Ford Motor Co.,* No. 94-3054, 1995 WL 523646, at

*3 (10th Cir. Aug. 29, 1994) ("If the default was the result of the defendant's culpable conduct,

the district court may refuse to set aside the default on that basis alone."); *Guttman,* 167 F. App'x

at 4 ("even where there is a meritorious defense and no prejudice to the adversary, willful failure

alone may constitute sufficient cause for the court to deny the motion [to set aside the default.]")

(citation and internal quotation marks omitted).

Finally, the court grants Defendant Glass's request to strike Defendant Gerbitz's Answer

and Cross-Claim.  Under Fed. R. Civ. P. 12(f), the court may strike from a pleading "any

immaterial [or] impertinent . . . matter."  In light of Defendant Gerbitz's default, the court must

accept Defendant Glass's well-pleaded allegations of fact as true.  *CrossFit, Inc. v. Jenkins,* --- F.

Supp. 3d ----, 2014 WL 4706066, at *4 (D. Colo. Sept. 22, 2014) (citing *Dundee Cement Co. v.*

*Howard Pipe & Concrete Prods.,* 722 F.2d 1319, 1323 (7th Cir. 1983)).  Accordingly, because it

cannot be considered to contradict to Defendant Glass's allegations, the court finds that Defendant Gerbitz's Answer and Cross-Claim is immaterial or impertinent.

## II.   MOTION FOR DEFAULT JUDGMENT

Pursuant to Fed. R. Civ. P. 55, default may enter against a party who fails to appear or otherwise defend a lawsuit.  Here, entry of default was proper because Defendant Gerbitz failed to timely respond to Plaintiff's Complaint and, as discussed *supra,* Defendant Gerbitz has failed to show good cause for setting aside the entry of default.  Before proceeding with a default judgment, however, the court must consider whether it has jurisdiction, whether the facts establish a legitimate basis for the entry of judgment and whether the damages can be ascertained.

### A.   Jurisdiction

In determining whether a default judgment is warranted, the court must first consider whether it has jurisdiction over the subject matter and the defendants.  *Dennis Garberg & Associates, Inc., v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986).  The court must do so in consideration of the well-established rule that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action." *United States v. 51 Pieces of Real Prop.,* 17 F.3d 1306, 1309 (10th Cir. 1994).

### 1.   Subject Matter Jurisdiction

The court finds it has jurisdiction over this matter pursuant to 28 U.S.C. § 1335, which provides as follows:

(a) The district courts shall have original jurisdiction of any civil action of interpleader . . . filed by any person, firm, or corporation . . . having in his or its custody or possession

money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more . . . if

> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if

> (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court . . . .

Here, the value of the benefits under the Policy exceeds $500.  Defendants Glass and Gerbitz reside in Colorado and Illinois, respectively, and are therefore of diverse citizenship. Finally, as discussed above, Combined has deposited $73,150.01, the value of the Policy benefits, into the Registry of the Court.  As such, the court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1335.

### 2.       *Personal Jurisdiction*

In addition to subject matter jurisdiction, entry of a default judgment in a civil case requires personal jurisdiction over the defendant. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010).  Where Congress has statutorily authorized nationwide service of process under a given statute, proper service establishes personal jurisdiction over a defendant, provided that the court's exercise of jurisdiction comports with the Fifth Amendment's Due Process guarantee. *See Peay v. Bell South Med. Assistance Plan,* 205 F.3d 1206, 1209 (10th Cir. 2000).  To show that the exercise of personal jurisdiction does not comport with the Fifth Amendment, "[t]he burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will

make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison." *Id* at 1212.

The interpleader statue provides for nationwide service of process on all claimants.  28 U.S.C. § 2361.  Further, under Rule 4(d), the Waiver of the Service of Summons signed by Defendant Gerbitz establishes proper service.  Fed. R. Civ P. 4(d)(4).  Finally, Defendant Gerbitz has not argued that the exercise of personal jurisdiction over him violates the Fifth Amendment's guarantee of due process.  Accordingly, the court finds that it has personal jurisdiction over Defendant Gerbitz.

### B.    *Factual Basis for Default Judgment*

Even after a proper entry of default, the court must decide "'whether the unchallenged facts constitute a legitimate cause of action'" such that a judgment should be entered.  *Bixler,* 596 F.3d at 762 (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE § 2688, at 63 (3d ed. 1998)).  "'There must be a sufficient basis in the pleadings for the judgment entered.'"  *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)).  "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court."  *Greenwich Ins. Co. v. Daniel Law Firm,* No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (unpublished decision) (quoting *Cablevision of Southern Conn., Ltd. Partnership v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).

When default has been properly entered, the moving party enjoys the benefit of deferential pleading interpretation.  *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).  As discussed *supra*, the court deems the non-defaulting party's well-pled allegations

as true. *CrossFit, Inc.*, 2014 WL 4706066, at *4 (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).  Undisputed facts set forth by the moving party in affidavits and exhibits are also accepted as true.  *Id.*

"Interpleader is a form of joinder open to one who does not know to which of several claimants it is liable." *Amoco Prod. Co. v. Aspen Group*, 59 F. Supp. 2d 1112, 1114 (D. Colo. 1999) (citation omitted).  "An interpleader action allows the stakeholder to bring the several claimants into a single action and to require them to litigate among themselves to determine which has the valid claim." *Id.*  "When an insurer brings an action of interpleader to facilitate the handling of multiple claims to a limited fund, it admits its liability as an insurer to make available the proceeds of its policy." *Gen. Accident Group v. Gagliardi*, 593 F. Supp. 1080, 1089 (D.Conn. 1984).  "It concedes its obligation to pay the proceeds to someone, but concedes no obligation to any one in particular." *Id.*  "That obligation accrues only upon the adjudication of conflicting claims, and that adjudication cannot occur absent a timely and formal assertion of a claim against the proceeds on deposit." *Id.*

"[T]he failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the *res* can be viewed as forfeiting any claim of entitlement that might have been asserted.'" *Amoco Prod. Co.*, 59 F. Supp. 2d at 1116 (quoting *Gulf Coast Galvanizing, Inc. v. Steel Sales Co.,* 826 F. Supp. 197, 203 (S.D. Miss. 1993)).  Further, in an interpleader action in which all but one named interpleader defendant has defaulted, the remaining defendant is entitled to the *res*.  *Id.*  *See also Nationwide Mut. Fire Ins. Co. v. Eason*, 736 F .2d 130, 133 n. 4 (4th Cir. 1984) ("if all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund."); *New York Life Ins. Co. v. Conn. Dev. Auth.,* 700 F.2d 91, 95 n. 6 (2d Cir.

1983) (default of interpleader defendants expedited conclusion of interpleader action by obviating need for judicial determination of answering defendant's entitlement to stake); *Gen. Accident Group,* 593 F.Supp. at 1089; *Sun Life Assur. Co. of Canada v. Conroy,* 431 F. Supp. 2d 220, 226 (D.R.I. 2006).

As discussed above, Defendant Gerbitz failed to timely respond to this action, a default was entered against him, and the court declines to set aside the entry of default.  Accordingly, the court finds that Defendant Glass, as the sole remaining interpleader defendant is entitled to recoup the benefits payable under the Policy.  Further, the court finds that Defendant Glass's well-pleaded allegations demonstrate that she is entitled to the Policy benefits.  Defendant Glass was named as the beneficiary to the Policy at the time it was issued, and the Insured never attempted, much less accomplished, a change of beneficiary in accordance with the terms of the Policy.  As such, Defendant Glass is entitled to the proceeds of the Policy.  *See Fox,* 344 P.2d at 975-76 (absent grounds for equitable substitution, the named beneficiary is entitled to recovery the proceeds of a life insurance policy).  Accordingly, the court grants Defendant Glass's Motion for Default Judgment.

**III.    *COMBINED's MOTIONS TO DISMISS AND FOR COSTS AND ATTORNEY'S FEES***

Combined seeks to be dismissed as the interpleader Plaintiff and an award of attorney's fees and attorney's fees.

The court grants Combined's request to be dismissed as the interpleader plaintiff.

Where an insurance company is a mere stakeholder and can contribute nothing toward resolution of the issues between the other parties, its interpleader action is properly filed, and no genuine issue exists as to its rights and liabilities, "it should be discharged from any and all liability arising out of or based on the policies involved, except to pay the proceeds of such policies to the party or parties ultimately adjudge to be entitled thereto."

*Am. Home Life Ins. Co. v. Barber,* No. 02-4168-SAC, 2003 WL 21289986, at *2 (D. Kan. May 15, 2003) (quoting *Rosenberg v. Northwestern Mut. Life Ins. Co.,* 176 F. Supp. 379, 385 (D. Kan. 1959). *See also Francis I. du Pont & Co. v. Sheen,* 324 F.2d 3, 5 (3d Cir. 1963) (When a plaintiff in interpleader has paid the amount of his admitted debt into court and, after notice and opportunity to be heard, the claimants have been ordered to interplead, the law normally regards the plaintiff as having discharged his full responsibility in the premises and "the court often enters an order finally relieving the plaintiff of further responsibility and permanently enjoining the claimants from harassing him.").

Combined has met the statutory prerequisites for interpleader, has admitted liability to pay the insurance proceeds to the proper recipient, has deposited the insurance proceeds into the Registry of the Court, and has no interest in the insurance proceeds or other stake in the outcome of the dispute between Defendants. As such, Combined is a disinterested stakeholder and the court will dismiss Combined from this action and discharge it from all further liability to Defendants.

The court also grants Combined's request for attorney's fees. Although neither rule nor statute specifically provides for attorney's fees and costs in interpleader cases, "[f]ederal practice . . . has followed the traditional equity rule that gives the trial court discretion to allow a disinterested stakeholder to recover costs and attorney's fees from the stake itself." *Life Investors Ins. Co. of Am. v. Childs,* 209 F. Supp. 2d 1255, 1256 (M.D. Ala. 2002) (quoting 4 J. Moore, MOORE'S FEDERAL PRACTICE § 22.06 (3d ed. 2002)); *see also U.S. Fidelity & Guar. Co. v. Sidwell,* 525 F.2d 472, 475 (10th Cir. 1975) (recognizing the "common practice" that the deposited fund is chargeable with reasonable fees incurred).

In bringing this action, Combined was required to draft and file its Complaint, serve process, draft and file several motions, and file a Status Report.  Defendant Glass does not oppose Combined's request for attorney's fees and costs.  Accordingly, the court concludes that Combined's request for $5,546.20 for attorney's fees and costs is appropriate.

Therefore, for the foregoing reasons, it is

ORDERED that Defendant Jennifer Glass's "Motion for Entry of Default Judgment against Defendant Alan Gerbitz" (Doc. No. 19) and "Motion to Strike Defendant Gerbitz's Answer to Complaint in Interpleader and Cross-Claim against Defendant Glass" (Doc. No. 29) and Plaintiff Combined Insurance Company of America's Motion to Dismiss Interpleader Plaintiff (Doc. No. 17) and Motion for Attorneys' Fees and Costs (Doc. No. 18) are GRANTED. It is further

ORDERED that Defendant Alan Gerbitz's Answer to Complaint in Interpleader and Cross-Claim against Defendant Glass (Doc. No. 28) is STRICKEN.  It is further

ORDERED that the Clerk shall enter judgment to declare that Alan Gerbitz, as personal representative of the estate of Richard E. Gerbitz, has defaulted in this interpleader action and has thereby waived any entitlement to payment of the proceeds of the benefits of the Accident Only Life Insurance Policy payable as the result of the death of Richard E. Gerbitz.  It is further

ORDERED that the death benefits shall be payable solely to Jennifer Glass and that Alan Gerbitz is enjoined from instituting any action against Combined Insurance Company of America for payment of the life insurance benefits that are being paid to Ms. Glass.  It is further

ORDERED that Combined Insurance Company of America is granted the sum of $5,546.20 as costs and attorney's fees in this civil action with the remainder of the sum on deposit to be paid to Jennifer Glass.  It is further

ORDERED that the Clerk of Court shall distribute the funds in the registry in accordance with this Order.

Dated this 3rd day of March, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge